UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Chafin, Decker and AtLee
Argued at Richmond, Virginia


SUNDERSINGH BALA

MEMORANDUM OPINION* BY
v.      Record No. 1508-17-2      JUDGE RICHARD Y. ATLEE, JR.
MAY 29, 2018

VIRGINIA RETIREMENT SYSTEM


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Gregory L. Rupe, Judge

Scott G. Crowley (Crowley & Crowley, P.C., on brief), for
appellant.

Brian J. Goodman, Legal Affairs & Compliance Coordinator,
Virginia Retirement System (Mark R. Herring, Attorney General;
John W. Daniel, II, Deputy Attorney General; Heather Hays
Lockerman, Senior Assistant Attorney General/Section Chief, on
brief), for appellee.


Appellant Sundersingh Bala appeals the decision of the Circuit Court of the City of

Richmond, arguing that it erred in affirming the finding of the Virginia Retirement System

("VRS") that Bala forfeited six years of credited service under the Workforce Transition Act

("WTA") when he resumed employment with the Commonwealth of Virginia.  He asserts that

VRS "violated the law by failing to properly and adequately notify him that by returning to a

VRS-qualified position, he would be forfeiting his credited service."  For the following reasons,

we disagree and affirm the circuit court's decision.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I. BACKGROUND

In December 2009, Bala was involuntarily separated from his accounting position with the Virginia Department of Conservation and Recreation ("DCR"). Bala worked for DCR for approximately twenty-five years. Instead of a transitional severance benefit, he elected to receive six years of creditable service under the WTA[1] toward his VRS-managed retirement benefit. Upon retirement, he received a VRS "Retirement Certificate" stating that:

> The total Workforce Transition Act (WTA) credit added to your age and/or service was 6 years. In the calculation of your benefit, 0 years 0 months were added to your age and 6 years 0 months were added to your service. *If you return to work in any VRS covered position, you will forfeit your WTA credit. When you retire again, the WTA credit will not be used in the calculation of your VRS benefit.* You must retire under the same option selected in your initial retirement.

(Emphasis added).

In February 2015, Bala began a new position with the Virginia Department of Health ("VDH"). Prior to beginning this position, he twice contacted VRS. There is no record of the first communication, which Bala stated took place in December 2014. According to Bala, VRS did not mention the impact returning to work would have on his WTA credits or retirement calculation. Most pertinent to his appeal, Bala contacted a VRS hotline the same day he started the new position at VDH. His conversation with a VRS agent was recorded and transcribed. The transcript reads:

> VRS: Okay thank you. Alright, when you retired there was only Plan 1, Plan 2 had not gone into effect yet.

___

[1] "The WTA provides that certain employees of the Commonwealth who are involuntarily separated from employment are eligible for transitional severance benefits." Boynton v. Kilgore, 271 Va. 220, 224, 623 S.E.2d 922, 924 (2006); see also Code § 2.2-3203 (explaining the recurring and lump sum payments that comprise the transitional severance benefit). "In lieu of the transitional severance benefit provided in [Code] § 2.2-3203, any otherwise eligible employee . . . may elect to have the Commonwealth purchase on his behalf years to be credited to either his age or creditable service or a combination of age and creditable service . . . ." Code § 2.2-3204. Bala made such an election.

Bala:  Oh.

VRS:  So you retired as original, in the original plan that you started (. . .) when you became a member years ago.

Bala:  Okay, if I go back to the job and take a permanent job with with the state should I go into plan B or plan 1 (. . .)

VRS:  You'll stay where you are you'll continue in your plan 1, so you'll just go back in with the same plan that you had and start off with the same amount of service that you had when you retired in 2010.

Bala:  Okay another question, if I go back to the work, and, what I lose?  Anything I lose?

VRS:  Well you're going to . . . your monthly benefit will stop.

Bala:  Yeah, right.  But anything else?

VRS:  So you won't get that. . . . no sir.

Bala:  And then and then, I . . . still work for a year or two and then restart again, right.

VRS:  Right.  We'll recalculate your monthly benefit with the additional years of service and . . .

Bala:  Oh, you put more additional service in the account?

VRS:  Right.  The only stipulation with retiring a second time is that you have to, we have to calculate your benefit based on the same option that you originally chose when you retired in 2010.

Bala:  (. . .)  Is not same plus the extra service, no?

VRS:  No, You won't get the partial lump sum money again . . .

Bala:  so

VRS:  . . . what we will do is we will calculate it based on the basic with the lump sum option, so that's how the formula will be calculated but you won't get the lump sum of money again.

Bala:  Uh Huh.  Which means I won't lose anything I'll just gain a little bit more if I do one year extra or maybe two years more?

VRS:  Right.

Bala: That's what I . . . as long as I don't lose at least I'll restart where I whatever I was getting. Okay that's good. Okay. Thank you.

(alterations in original). Finally, the agent directed Bala to a VRS webpage that explained, in detail, the impact that resuming employment with a VRS-covered position would have on his WTA service credit. Bala never visited that webpage.

Bala left his position with VDH in October 2015. When he received his new VRS Retirement Certificate, it reflected that he had forfeited the six years of credited service under the WTA, resulting in a reduced monthly benefit of approximately $600.[2] He appealed to VRS, which conducted a comprehensive review, ultimately concluding that Bala received ample notice that returning to state employment would result in a loss of that credit. Although Bala purportedly relied upon his conversation with the VRS hotline agent in believing he would not lose any benefits, VRS noted that he did not mention at any point during that conversation that his retirement benefit calculation included WTA credit. VRS also explained that it contacted DCR and "confirmed that [Bala was] counseled regarding WTA and the impacts of return[ing] to work in a VRS-covered position prior to your WTA retirement." DCR also, on multiple occasions following Bala's retirement, provided written information on his WTA retirement benefits and the impact of returning to work in a VRS-covered position. Finally, VRS noted that Bala's call to the VRS hotline on February 25, 2015 coincided with his first day of work at VDH, and thus Bala "had already taken the steps to return to and commenced full time work when you first contacted VRS about your situation."

---

[2] It is not entirely clear from the record how much Bala's forfeiting the six years of WTA credit reduced his monthly benefit. The fact-finder below noted that Bala estimated that additional credit "would have added approximately six hundred dollars of monthly benefit," but at other points, Bala claimed his benefit was reduced by $418.88.

Bala appealed this decision, and after an administrative informal fact-finding hearing pursuant to the Virginia Administrative Process Act, the fact-finder concluded that Bala either was or should have been aware that he would forfeit his WTA credit when he resumed state employment with VDH. The fact-finder concluded that Bala, in his call to the VRS hotline, failed to mention the most essential piece of information — his six years of WTA credit — to the VRS agent, soliciting the answers that he relies upon here. Absent that information, the VRS agent's answers were appropriate and correct. The fact-finder noted that "it would be unrealistic to expect an agent to anticipate and proactively respond to every scenario that could be posed by a member, but was not." The circuit court affirmed this decision. Bala appeals that decision to this Court.

## II. ANALYSIS

In an appeal of an agency decision, "the party complaining of the agency action must demonstrate an error of law, which error may include 'the substantiality of the evidentiary support for findings of fact.'" Va. Ret. Sys. v. Blair, 64 Va. App. 756, 763, 772 S.E.2d 26, 29 (2015) (quoting Code § 2.2-4027).

> The meaning and application of the substantial evidence standard in the context of appellate review have been long established. As we have stated on numerous occasions, an appellate court applying the substantial evidence standard may "reject an agency's factual findings only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion. 'Substantial evidence' refers to such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Id. at 765, 772 S.E.2d at 30 (quoting Doctors' Hosp. of Williamsburg, LLC v. Stroube, 52 Va. App. 599, 607, 665 S.E.2d 862, 865 (2008)); see also All. to Save the Mattaponi v. Commonwealth Dep't of Envtl. Quality ex rel. State Water Control Bd., 270 Va. 423, 441, 621 S.E.2d 78, 88 (2005).

We find no error here, as substantial evidence supported VRS's conclusion that Bala either knew or should have known that returning to a VRS-covered position would result in forfeiting his WTA service credit. Bala's first Retirement Certificate explicitly stated: "If you return to work in any VRS covered position, you will forfeit your WTA credit." This language was not, as Bala claims, "buried," but rather was printed *on the first page* of the two-page certificate, in the same size text and font used throughout the entire document. As the recipient of retirement benefits, it was incumbent on Bala to take reasonable steps to inform himself as to the terms of his benefits. Reading the first page of such a brief document is hardly so onerous a task that it would excuse Bala's failure to do so.

Furthermore, Bala received counseling about his retirement, including the terms of his WTA service credit. He affirmatively elected to receive this benefit in lieu of a lump-sum severance benefit under the WTA, making it difficult to accept his claim that he was not informed that he would lose this credited service if he resumed state employment. After his initial retirement, VRS also provided resources, in plain language, on its website explaining the impact of returning to a VRS-covered position when one has elected to receive WTA service credits. Bala was directed to the website, but failed to visit it.

Bala's argument rests almost entirely on his conversation with the VRS agent that took place the same day he began working at VDH; however, the transcript of that conversation reveals that he did not mention to the agent that he was a recipient of WTA credit. Instead, he asked vague questions and made no mention of the one piece of information most critical to his inquiry.[3] Because the agent did not know that Bala had elected to receive a WTA service credit

___

[3] Although the fact-finder did not make any express finding to this effect, it seems unlikely that Bala could have been completely unaware of the terms of the WTA credit, or the impact returning to a VRS-covered position would have on it. In addition to the ample information and counseling he received, detailed above, he also extensively litigated his

in lieu of a lump-sum severance payment, she noted that Bala would not "get the partial lump sum money again." Bala did not follow-up on, or request any elaboration about, this statement. For these reasons, the circuit court did not err in finding that VRS's decision was supported by substantial evidence, and in affirming its decision.

### III. Conclusion

The circuit court did not err in affirming VRS's determination that Bala knew or should have known that he would forfeit his WTA credit upon returning to work with the Commonwealth.

<u>Affirmed.</u>

---

termination. See Bala v. Va. Dep't of Conservation & Recreation, 614 F. App'x 636, 640 (4th Cir.), cert. denied, 2015 U.S. LEXIS 7488 (2015) (describing the history of Bala's complaints and appeals, and explaining that after administrative review, he expressly agreed to receive "reinstatement to his former position, with back pay and benefits," but "chose to negotiate away that specific remedy in order to retain his early retirement benefits").